Judgment affirmed, with costs.

---

IN THE MATTER OF THE APPLICATION OF WILLIAM HERBST AND ANOTHER FOR LEAVE TO SUE HENRY WINTHROP GRAY, AS RECEIVER OF THE FIRM OF LEVY BROS. & CO.

*Receiver — leave to sue him — lien for work — not made the subject of an independent action.*

In an action brought by Hardt and others against the firm of Levy Bros. & Co., Henry W. Gray was appointed a receiver of the goods, etc., of that firm. Before the failure of Levy Bros. & Co. the firm of Herbst & Morrison had received from them certain coats which were to be made up under an agreement that Herbst & Morrison were to have a general lien upon the coats for their labor.

Not having been paid for their labor thereon Herbst & Morrison refused to surrender the coats to the receiver, and applied for leave to sue the receiver upon this claim. The receiver had already begun a proceeding, in the action in which he was appointed receiver, to punish Herbst & Morrison for contempt.

*Held*, that the property of Levy Bros. & Co. was deemed to be in the possession of the court; that the claim of Herbst & Morrison, whether equitable in its nature or a claim by them as pledgees, was a claim which should be disposed of in the receiver's action, and that their application for leave to bring an independent action was properly denied. (VAN BRUNT, P. J., dissenting.)

APPEAL by the petitioners, William Herbst and Morris Morrison, who were partners, from an order, made on the 23d day of November, 1891, denying their application to sue Henry Winthrop Gray, as receiver of the firm of Levy Bros. & Co., in order to foreclose a lien upon certain property of Levy Brothers & Co.

*Abram Kling*, for the petitioners, appellants.

*G. Zabriskie*, for the receiver, respondent.

O'BRIEN, J.:

William Herbst and Morris Morrison applied at Special Term for leave to sue Henry W. Gray, a receiver of the firm of Levy Bros.

& Co., or to interplead him as one of the defendants in a suit to be brought to foreclose a lien upon chattels.

By their petition the appellants claim that they performed work, labor and services as tailors, in the manufacture of certain clothing, to the value of $2,576.80, at the request of Levy Bros. & Co.; that the said firm agreed that they should have a general lien upon 315 coats, delivered to them to be made up; that they did the work on the coats, but have not been paid. In a suit brought by Hardt and others against Levy Bros. & Co. and others, Gray was, by an order of this court dated May 21, 1891, appointed the receiver of the said copartnership firm, and claims all the property by reason of such appointment. The affidavit which accompanies the petition states that a proceeding is now pending in this court to punish the petitioners for contempt for failure to turn over to the receiver the same goods and chattels on which they claim a lien, and that the motion is made in the action of Hardt against Levy, in which the receiver was appointed. It is, upon these facts, insisted by petitioners, that nothing appears to justify the order made by the justice below, and that the denial of petitioners' application was a refusal to allow them having a legally undisputed claim to prosecute the remedy which the law prescribed, and from seeking in the courts an enforcement of their legal and constitutional rights.

The receiver, in his affidavit, shows that the object of the action in which he was appointed receiver is to prevent multiplicity of actions, and to ascertain and adjudicate in that suit the claims of all persons in respect to the property attached by the sheriff or held under claim of lien. In respect to the delivery of receivership property to the receiver, or the surrender of receivership property by the receiver, many applications have been made by this receiver in the suit in which he was appointed, and the court, in the exercise of its discretion, deemed it wiser to retain all such questions for settlement in the principal suit, and not to require or permit other actions to be brought. With respect to the property held by the appellants, such an application was made by the receiver, and to forestall the decision of the court the appellants made their motion for leave to bring an independent action to foreclose their lien. Such an action as proposed is equitable in its nature, and one which can be established and enforced by a court of equity, or the court can,

in an equitable proceeding, require the claimant to submit his claim in the principal suit, and can therein give such relief to the petitioner as he may show himself entitled to.. Upon these applications at Special Term, the court has held that, even with regard to claims of a legal nature triable by right by jury, it will, in its discretion, permit such an action to be brought. This rule has not, however, been extended to actions such as this one, which is of an equitable nature, for the reason, as stated, that any claim or lien can be disposed of in the principal suit without injury to any of the claimant's legal or constitutional rights, and thus secure the object of the principal action by preventing a multiplicity of suits. The theory upon which such action of the court is based is that where the court has taken possession of property and appointed a receiver, it has power to try all adverse claims in the principal suit. Such a disposition of adverse claims is in accordance with the former equity practice, which has not been taken away nor superseded by statute. And it appearing by the record that a proceeding has actually been brought by the receiver to have the claim of petitioners determined, it was proper for the court, in the exercise of its discretion, to deny the leave to sue the receiver, which was applied for.

We think that the order appealed from should be affirmed, with ten dollars costs and disbursements.

PATTERSON, J. :

I concur for the reason that it is utterly unnecessary to sue the receiver. The petitioners hold the goods as pledgees, and they have only to apply to the court on notice to the receiver for leave to sell, or if their right is disputed, for a reference to determine it. There is no propriety in putting the receiver to the expense and delay of an action when the whole matter can be disposed of by a reference in the main action, as was the practice in chancery, and as I understand it is now, for there being no provision in the Code of Civil Procedure as to applications of this character, rule 85 of the general rules of practice should apply.

VAN BRUNT, P. J. :

In the above memorandum Mr. Justice PATTERSON bases his decision upon the ground that the petitioners hold the goods as

pledgees, whereas the fact is beyond question that they do not hold the goods as pledgees, but as bailees and pledgees. If they held the goods as pledgees, they could sell the goods without coming into court, but being also bailees they cannot.

There never was any practice in the Court of Chancery or any other court which attempted to or could compel an utter stranger to the questions to be litigated in an action, to come into that action and try a question which was entirely separate and distinct.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusion arrived at by Mr. Justice O'BRIEN upon this appeal.

He seems to be of the opinion that the petitioners should be required to intervene in a suit in the issues of which they have not the slightest interest, in order that they may make available, rights which have been conferred upon them by the owners of the property mentioned in the petition.

The papers upon which this application has been made, and the answer to the same, have been very loosely and inaccurately drawn, so that it is difficult, without some previous knowledge of the litigations out of which this receivership arose, to determine exactly the status of the parties.

But sufficient appears to show with some degree of certainty that probably the receiver has but little, if any, interest in the goods which form the subject-matter involved. The petitioners allege that the firm of Levy Bros. & Co. were indebted to them in the sum of $2,576.80 for work, labor and services performed by them in the manufacture of clothing for said firm of Levy Bros. & Co., no part of which has been paid; and that in the month of May, 1891, the said firm being then largely indebted to the petitioners for work of the character above mentioned, desired the petitioners to do other work of a like character, and delivered goods for the purpose of manufacture, under the agreement that the petitioners should have a lien upon said goods, not only for the work bestowed thereon, but also for the indebtedness already existing; that, pursuant to said agreement, the petitioners received said goods and performed work, labor and services on the same, and that the whole amount of the indebtedness due to the petitioners was the sum above mentioned;

that in May, 1891, in a certain action, a receiver was appointed of the copartnership firm of Levy Bros. & Co., who claims all the property of said firm by reason of said appointment; and that the petitioners desired to commence an action to foreclose said mechanic's lien upon said chattels, and for the recovery of their debt; and that in such action it will be necessary to make such receiver a party defendant.

It will be seen, upon a consideration of the wording of this petition, that the petitioners had a very vague idea in regard to the rights which they had acquired by the transaction, calling the claim a mechanic's lien, whereas as to the work which had already been done they held the goods as a pawn or pledge, and only as to the work which was done subsequently did they hold the goods as bailees.

It appears from the affidavit of the receiver, made in opposition to the application, that he has no knowledge as to the merits of the claim of the petitioners, and denies that the property in question is the property of Levy Bros. & Co., or any of them, and claims that under the order of his appointment he is entitled to possession of the same. He then alleges that the object of the action in which he was appointed was, among other things, to avoid multiplicity of suits and to adjudicate in that suit the claims of all persons in respect to any of the property attached by the sheriff in favor of the National Park Bank, as stated in the complaint therein, and that the object and beneficial relief desired in said action will be frustrated if any claimants of any goods so attached were permitted to take the same out of the possession of the receiver before an adjudication in that action, or to maintain separate actions for the purpose of establishing their several rights or claims.

It is apparent from these allegations that the receiver was appointed of goods attached by the sheriff in the action of the National Park Bank against Levy Bros. & Co. for the purpose of preventing parties from taking possession of goods which were in the hands of the sheriff under the attachment, and which were to be transferred to the receiver. Now, in the first place, the petitioners are not attempting to take anything out of the possession of the receiver. The receiver, apparently, never has had possession of the goods in question, and certainly was never entitled to such possession.

# 252 MATTER OF HERBST.

The petitioners are not claiming the possession of any goods upon which the sheriff has levied an attachment, there being no evidence that the attachment was ever levied upon these goods. On the contrary, they are in the possession of the goods which have been theretofore pledged to them for a debt, and upon which they have a lien for work done subsequent to the pledge. They, therefore, have no interest in the litigations between the sheriff and the creditors of Levy Bros. & Co., in which the title to specific property is the subject-matter of investigation. And in considering the necessity of this application it is essential to bear in mind the different remedies which the petitioners have for the recovery of their debt; and the peculiar situation in which they are placed by the fact that as to a part of the debt the goods are a pledge or pawn, and as to the remainder they have a lien for work done; the one being a pledge, and the other a bailment for hire. A pledgee has the implied power to sell the pledged goods after a default by the pledgor without the intervention of any court. (Story on Bailments, 308.) But the party who holds a lien for work done has no right to sell them after default. (Id., 311.)

This distinction is pertinently stated in 1 Smith's Leading Cases (388). It is there stated that if the pawnor make default in payment at the stipulated time, the pawnee has a right to sell the pledge, and this he may do of his own accord, without any previous application to a court of equity, or he may sue the pawnor for his debt, retaining the pawn, for it is a mere collateral security. If he thinks proper to sell, the surplus produced, after satisfying the debt, belongs to the pawnor; while, on the other hand, if the pawn sells for less than the amount of the debt, the deficiency continues chargeable on the pawnor.

From all this it will be seen that a pawn differs, on the one hand, from a lien which conveys no right to sell whatever, but only a right to retain until the debt, in respect of which the lien was created, has been satisfied; and, on the other hand, from a mortgage which conveys the entire property of the thing mortgaged to the mortgagee conditionally, so that when the condition is broken the property remains absolutely in the mortgagee, whereas a pawn never conveys the general property to the pawnee, but only a special property in the thing pawned; and the effect of a default in payment of the

debt by the pawnor is not to pass the entire title of the thing pledged in the pawnee, but to give him the power to dispose of it, accounting for the surplus, which power, if he neglected to use the general property of the thing pawned, continues in the pawnor, who has a right at any time to redeem it. Therefore, the situation of the petitioners is that, without the intervention of a court of equity, as far as these goods are a pledge, they may sell, but as far as they are held for a lien they must foreclose their lien.

Under these circumstances, it is clear that the petitioners can only be protected in their rights by a foreclosure of the lien, including the pawn. Standing as they do, in a position entirely separate and distinct from persons claiming title to property, which has been reduced to possession by the sheriff, under his attachment, it would seem to be a great hardship to require them, in that litigation, to determine their rights, particularly as the receiver in that suit would have no power to deprive them of the possession of the property. In fact, the very idea of a lien of this kind and of a pawn carries with it the right to possession; and when possession is lost the lien is gone, differing in this respect also from a mortgage.

It may be that the receiver has no interest whatever in this question and that the petitioners might foreclose their lien, without reference to the receiver. But if there is any question on that point, and there may be, they are entitled to have him before the court in order that the rights of all parties may be amply protected and disposed of.

I am of the opinion, therefore, in view of the fact that these petitioners have no interest whatever in the class of litigations out of which the receivership arose, that they should be permitted to avail themselves of the security which they have received for the payment of their debt, and of the lien which they have for the work, which they have done, entirely untrammeled by controversies in which they have no interest.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted.

Order affirmed, with ten dollars costs and disbursements.